UNITED STATES of America, Plaintiff-Appellee,

v.

Oscar ORDONEZ, German Hernandez Garcia, aka Jaime Rivera, Defendants-Appellants.

Nos. 82–1506, 82–1508.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 7, 1983.

Decided Dec. 23, 1983.

Orders Denying Rehearing and Amending Opinion June 27, 1984.

Specially Concurring Opinion June 27, 1984.

Opinion as Amended July 11, 1984.

Norris, Circuit Judge, filed an opinion concurring in part.

794

796

George L. O'Connell, Los Angeles, Cal., for plaintiff-appellee.

Stanley I. Greenberg, Joseph T. Vodnoy, Los Angeles, Cal., for defendants-appellants.

Before ALARCON and NORRIS, Circuit Judges, and EAST *, District Judge.

AMENDED OPINION

ALARCON, Circuit Judge:

German Hernandez-Garcia, also known as Jaime Rivera, and Oscar Ordonez were each found guilty of conspiracy to possess and distribute cocaine (21 U.S.C. § 846) and

* Hon. William G. East, Senior United States District Judge for the District of Oregon, sitting by

two counts of possession of cocaine with the intent to distribute it (21 U.S.C. § 841(a)(1) (Count 2 and Count 7). Ordonez was found guilty of an additional count of possession of cocaine with the intent to distribute it (Count 2) and of the crime of occupying the position of organizer, supervisor, or manager of a continuing criminal enterprise (21 U.S.C. § 848) (Count 14).

We must decide whether entries in a ledger were admissible to prove (1) the existence of a conspiracy or acts in furtherance thereof, (2) the corpus delicti of the crime of possession of cocaine with intent to distribute it, and (3) that a person is a leader of a continuing criminal enterprise, where the identity of the person who made the notation in the record is unknown.

We have concluded that insufficient foundational facts were presented to demonstrate the admissibility of the entries to prove the truth of the matter asserted. Accordingly, we must reverse the possession and continuing criminal enterprise charges because the government failed to lay a proper foundation for the admissibility of the entries to prove essential elements of these offenses.

We reverse the conspiracy charge because of the prejudicial impact of the inadmissible ledger entries on the jury's fact finding function.

We have also determined that the court committed prejudicial error in the manner in which it disposed of appellant's motion to disclose the identity of the informer.

We have set forth the facts in considerable detail to assess the effect of the court's erroneous evidentiary rulings on the fairness of the trial.

I.

FACTUAL BACKGROUND

A. *Pertinent Facts Presented at Trial*

Surveillance by law enforcement officers of several locations in Southwest Los An-

designation.

geles began in late September, 1981. This investigation ultimately focused on three houses: Marina Bay Drive, Palm Street and Norwalk Boulevard. Police observed numerous persons transporting packages between the locations. German Hernandez-Garcia was observed twice during the prearrest stage of the investigation; once at the Palm Street residence and on another occasion at a bar accompanied by several co-defendants. On October 30, 1981 a search was conducted at the three residences. Ordonez was arrested at the residence on Marina Bay Drive. The officers seized several ledgers containing entries in Spanish. The search also disclosed narcotics paraphernalia, $350,000 in cash, five Colombian passports, and some immigration forms. German Hernandez-Garcia's wife was sitting next to a suitcase which contained the $385,000 at the time of the seizure. She was not arrested. One of the passports was issued to German Hernandez-Garcia. The immigration forms were addressed to Ordonez at his Sunland residence.

On the same date, German Hernandez-Garcia approached the Palm Street residence, after the officers had entered pursuant to the search warrant. The officers pulled German Hernandez-Garcia inside the house. Approximately four kilograms of cocaine and $16,000 in United States currency were seized at the Palm Street house. Additional ledgers were found at this location. Dental records in the names of Mr. and Mrs. J. Rivera were also found. Business records from the dentist's office reflected a $7,500 cash payment for Mrs. Rivera's treatment.

The officers also found narcotics paraphernalia at the Norwalk Boulevard residence. During the search at this location, the telephone rang. One caller asked to speak to "Jaime". This caller ordered one kilo of cocaine. Another caller asked to speak to "Jaime, my brother", and gave Sanchez an address on Pioneer Street where the caller could be located. Sanchez later went to that address where he arrested Antonio Hernandez, German Hernandez-Garcia's brother. The government asked the jury to infer that the caller's statements were proof that Hernandez-Garcia was known as "Jaime".

Ordonez was listed as one of the lessees on each of the three homes searched. The utility bills for these residences were also in his name. The total rent paid each month exceeded several thousand dollars; $2,500 for Marina Bay Drive, $700 for Norwalk Boulevard, and $500 for Palm Street. These payments were usually made by Ordonez in cash. The government argued to the jury that Ordonez received substantial income from the cocaine transactions because the high monthly rental payments necessarily reflected an increase in his earnings from previous years. Ordonez' tax returns for 1976–1979 showed an average annual income of only $27,000. Ordonez introduced someone as "Jaime Rivera" to Mr. Wright, a manager of the Marina Bay Drive property. Mr. Wright testified that this individual was *not* German Hernandez-Garcia.

Over defense objection, the ledgers seized during the search were admitted into evidence. The trial court ruled outside the presence of the jury, that the ledgers were admissible under the co-conspirator exception to the hearsay rule. Fed.R.Evid. 801(d)(2)(E). The trial court did not give any special instructions limiting the use of this evidence at the time it was received, or throughout the course of the trial.

Frank, a handwriting and fingerprint expert, testified that a majority of the entries on the ledgers were made by at least four unidentified persons.

In Frank's opinion five fingerprints were left on the ledgers by German Hernandez-Garcia. Ordonez left one fingerprint identifiable. Ordonez' handwriting appeared on several pages. German Hernandez-Garcia's handwriting was not found on any of the entries.

Drug Enforcement Agent Larry Lyons was qualified as an expert witness on "Colombian cocaine organizations" and the "interpretation of the books and records of narcotics organizations." Lyons testified

that the entries in the ledger were in a code which required interpretation by an expert with his experience and qualifications. Lyons told the jury that in his opinion, the ledgers consisted of working papers, ledger cards, a record of funds paid to members of the organization, a master ledger, a cocaine distribution ledger and a money flow ledger. According to Lyons, the ledgers recorded the cocaine transactions of an organization from late 1980 through September 1981.

Lyons also testified that in his opinion, the ledgers were business records made in the regular course of business, which reflected daily cocaine transactions including deliveries made to numerous individuals. These records were necessary to keep track of the large quantity of narcotics and cash exchanged. Lyons also stated that the coded entries reflected precisely the known wholesale prices of cocaine.

The entries made in Ordonez' handwriting appeared in one notebook and on two separate cards which, Lyons believed, were part of the money flow ledger and master ledger.

Lyons testified that the names "Oscar" and "Jaime" appeared in numerous ledger entries. He stated that the three variations of the name "Oscar" referred to Ordonez and the six variations of the name "Jaime" referred primarily to German Hernandez-Garcia. He testified, however, that the name "Jaime" also referred to several other persons. According to Lyons, the entry for March 4, 1981, as decoded, indicated "arrived five kilos brought by Jaime and Oscar."

Lyons construed this as indicating that Ordonez and Hernandez-Garcia possessed 11 pounds of cocaine with the intent to distribute on that date. This testimony was used to support the allegations in Count 7 of the indictment. The ledgers were also used to prove that Ordonez possessed 48.4 pounds of cocaine with intent to distribute on June 15, 1981, as charged in Count 11. No other evidence was offered in support of these charges. No one testified that he saw Ordonez or Hernandez-Garcia in possession of cocaine on these dates.

The government argued to the jury that several entries cumulatively established that Ordonez possessed cocaine on June 15, 1981. None of the ledger entries, however, specifically referred to a transaction on that date.

## II.

### DISCUSSION

A. *Admissibility of the Ledger Entries For the Truth of the Matter Asserted*

Ordonez and Hernandez-Garcia argue that a proper foundation was not presented for the admission of the ledger entries for the truth of the matter asserted under the co-conspirator exception to the hearsay rule. We agree.

When the ledgers were first offered into evidence, Ordonez's counsel interposed a "foundational objection with respect to the admissibility of the ledgers." The court was further informed, "I believe that the contents in these ledgers are hearsay." In response to this objection, the court stated:

It is coming up because it was found ... If he can't connect it up, I will vacate my previous ruling.

Thus, the court did not purport to rule on the hearsay objections at this time.

It would appear from the court's comments, that the ledgers were received into evidence at this point in the trial as physical objects found at the scene and not for the truth of the matters contained in the various entries.

Later in the trial, defense counsel objected to the use of the entries in the ledgers to prove the truth of the matters contained therein concerning the narcotics transactions referred to in Count 7 and Count 11 of the narcotics transactions indictment. After listening to argument from both sides, the court stated: "Objection is overruled. I will take a good look at that during the Rule 29 motions." Subsequently, the court requested that counsel pre-

pare "points and authorities on the key issue of the so-called admission and the *corpus delicti* relationship." Pursuant to this order, the government submitted a supplemental trial memorandum in which it argued:

In this case, there is ample evidence connecting each defendant to the conspiracy. Accordingly, the admissions in the ledgers are fully admissible against defendants as co-conspirator admissions. Fed. R.Evid. 801(d)(2).

Before ruling on the Rule 29 motion, the trial court first observed: "We do have testimony from an expert, Special Agent Larry Lyons indicating that the business records were extensive and absolutely required in this nature of business or type of business and there was exactness required in terms of the contraband transaction ..."

Later, however, the trial court ruled that the ledgers were admissible as admissions to prove the corpus delicti of the narcotics transactions alleged in Count 7 and Count 11. The court found "sufficient independent evidence to establish the trustworthiness of the admissions ... with respect to the substantive possession counts."

Before analyzing the issues presented by the admission of the entries in the ledgers for the truth of the matter asserted, we believe the following facts must be considered:

One. The court did not expressly rule that the ledgers were admissible for the truth of the matter asserted concerning the conspiracy or the continuing criminal enterprise charge. Instead, the court provisionally admitted the *ledgers*, "because they were found." No issue has been raised before this court as to the admissibility of the ledgers, not for the truth of the matter asserted, but as circumstantial evidence "to show the character and use of the place where the notebooks were found ..." *United States v. Wilson*, 532 F.2d 641 at 645 (8th Cir.1976).

Two. No proof was offered by the government and no finding was made by the court concerning the identity of the persons who made the ledger entries which refer to the transactions described in Count 7 and Count 11 or whether the declarant was a co-conspirator.

▮ Three. No objection was made concerning the admissibility of the ledger entries at trial on the ground that the government had failed to prevent sufficient foundational facts to satisfy the requirements of the Confrontation Clause. Nevertheless, we are required to review plain errors affecting substantial rights although they were not brought to the attention of the trial court. Fed.Rules of Evid.Rule 103(d). We are satisfied that a contention that the government failed to comply with the Confrontation Clause involves substantial rights which must be reviewed even in the absence of a timely objection. *United States v. Traylor*, 656 F.2d 1326, 1333 (9th Cir.1981).

Four. The court failed to give limiting instructions concerning the purpose for which the ledgers and the entries were received into evidence. The jury was not told that the jury could infer from the existence of the ledgers that the defendants were engaged in the distribution of narcotics.

The jury was not advised that the entries in the ledgers were not admissible for the truth of the matter asserted.

The jury was not told that it could consider the entries in the ledgers "as proof of each of the elements of the crimes charged in Count 7 and Count 11 if they found that the entries were accurate and corroborated by other reliable evidence.

At oral argument, the court on its own motion asked the Government to comment on the admissibility of the ledger entries for the truth of the matter asserted. After filing the original opinion in this matter, this court ordered the filing of additional briefs and heard further argument on the admissibility of the ledger entries for the truth of the matter asserted.

Having considered the government's arguments concerning the admissibility of the ledger entries under the hearsay rule

and the Confrontation Clause, we reaffirm our conclusion that the requisite foundational facts were not presented by the government to support the admissibility of the ledger entries as (1) admissions (2) statements of a co-conspirator (3) as trustworthy business records. The government also failed to present evidence to satisfy the reliability requirements of the Confrontation Clause.

We begin our discussion by analyzing each of the evidentiary theories advanced by the government at trial, in the original brief filed before this court, and on the points and authorities raised in connection with the petition for a rehearing.

### 1. *Foundational Requirement for Admissions*

The statement of a party opponent is admissible if it is "his own statement either in his individual or representative capacity." Fed.R.Evid. 801(d)(2)(A). No evidence was presented that the entries upon which the entries for March 4, 1981 and June 15, 1981 were the statements of either appellant.

█ The government's sole proof of the crime of possession of cocaine for distribution as charged in Counts 7 and 11 was based on the ledger entries. The government's handwriting expert could not identify the author of the entries for these dates. At oral argument the government conceded that the persons who made these entries were not identified at trial. Thus, the ledgers and the testimony interpreting their meaning were not admissible as the admissions of a party.

In its petition for a rehearing, the government claims that it argued to the trial court that the entries were admissible as *adoptive* admissions. We are referred to pages 1670 and 1679 and 1680 of the reporter's transcript in support of this argument. We read the record differently. The government, in response to the court's request for comment concerning the "substantive counts" replied as follows:

> Your Honor, the court, I think did sum up the issue which is, can the statement

which is in the nature of an admission or confession be used to prove the corpus of the crime. And the government's position is that it can.

We will assume, for purposes of assisting the trial court in considering this issue in the event of a retrial, that the issue of the admissibility of the ledger entries for the truth of the matter asserted as adoptive admissions is properly before this court. Under Rule 801(d)(2)(B) of the Federal Rules of Evidence a statement is not hearsay if "[t]he statement is offered against a party and ... is a statement of which he has manifested his adoption or belief in its truth."

The government argues that the possession of a document standing alone, is an adoption of its contents. The government refers us to *United States v. Marino*, 658 F.2d 1120 (6th Cir.1981) and *United States v. Canieso*, 470 F.2d 1224 (2d Cir.1972) in support of this bold proposition. The government has neglected to point to us, however, that in each of these cases no objection was made at trial to the admissibility of the documents found in the possession of the defendant. *Marino*, at 1124; *Canieso*, at 1232 n. 8. More importantly, in each case the evidence was *not* offered for the truth of the matter asserted. *Marino* at 1124; *Canieso* at 1232. The law of this circuit concerning the admissibility of a document, found in the possession of the defendant, for the truth of the matter asserted, is set forth in *Poy Coon Tom v. United States*, 7 F.2d 109 (9th Cir.1925). In *Poy Coon Tom*, the government offered an unsigned letter from a third person found in the defendant's possession which discussed a proposed narcotics transaction. The government offered the letter "to show that the plaintiff in error was a known trafficker in narcotics, and that he had not only sold narcotics to the informer in question, but to others as well." We concluded in *Poy Coon Tom* that the admission of the letter was prejudicial error.

We do not understand upon what principle the letter was admitted or was competent. It was manifestly not admissible

as the unsworn declaration or statement of the unknown writer, and it was equally inadmissible for the purpose of showing an admission or an implied admission on the part of the plaintiff in error, in the absence of proof tending to show that the letter was answered or otherwise acted upon.

The fact that an unanswered letter or other paper is found in the custody of a party, but not acknowledged by him, is not ground for the admission of the paper as evidence against him. Were it admitted, an innocent man might, by the artifice of others, be charged with a prima facie case of guilt, which he might find it difficult to repel. Wharton's Crim.Ev. (10th Ed.) p. 1411.

■ In the matter *sub judice*, the district court made no finding that appellants had manifested their adoption of the statements in the ledgers or that they had demonstrated their belief in their truth nor is there any evidence in this record that would support such an inference. The ledger entries were not admissible as adoptive admissions under the law of this circuit.

### 2. Foundational Requirement for Co-Conspirator's Statements

A statement by a co-conspirator during the course of and in furtherance of a conspiracy is admissible into evidence under Fed.R.Evid. 801(d)(2)(E). The government, in its petition for a hearing, argues, for the first time, that the entries were made by appellants' co-conspirators in furtherance of the conspiracy. Ordonez and Hernandez-Garcia argue that the entries were not admissible as declarations of a co-conspirator because the declarant was never identified.

The government contends that the statement of an *unidentified* person is admissible under the co-conspirator exception to the hearsay rule. The only authority cited to support this suggestion is *United States v. Whitten*, 706 F.2d 1000 (9th Cir.1983). This reference is curious since in *Whitten* the co-conspirator (Loving) was fully identi-

fied at trial. The issue before this court in *Whitten*, was whether the statement was made in furtherance of the conspiracy and not the identity of the declarant. 706 F.2d at 1018.

In *United States v. Snow*, 521 F.2d 730 (9th Cir.1975) we held that "otherwise inadmissible hearsay declarations of co-conspirators may be received into evidence when ... there is independent proof of the existence of the conspiracy and of the connection of the declarant and the defendant to it." *Id.* at 733.

At the time an objection was interposed concerning the admissibility of the entries as hearsay, the government did not suggest to the trial court that a proper foundation had been established under the co-conspirator exception. This theory was never advanced before the trial judge at any time during the trial. The trial court was not called upon to consider or to make any findings concerning the weight, sufficiency, and credibility of any foundational facts, independent of the expert's interpretation of the coded ledger entries, to prove the connection of the declarant to the conspiracy. Since this theory was not considered, we cannot now say that such evidence was *not* available. We decline to speculate on the state of this record that the trial court would have been satisfied that sufficient foundational facts were present to satisfy the co-conspirator exception, *if* the prosecutor had argued this theory in a timely manner. For us to sustain a theory of admissibility not presented below, would unfairly rob appellants of the opportunity to argue the weight, sufficiency and trustworthiness of the evidence to establish a proper foundation before the trial judge, or to offer proof to controvert the facts now relied upon by the government. *See Giordenello v. United States*, 357 U.S. 480, 488, 78 S.Ct. 1245, 1251, 2 L.Ed.2d 1503 (1957) (The government cannot support the admissibility of evidence on a theory raised for the first time on appeal because it would unfairly deprive the accused of an adequate opportunity to cross-examine the government's witnesses or adduce rebuttal evi-

dence). *See also Sims v. United States,* 405 F.2d 1381, 1383 (D.C.Cir.1968) (Consideration of alternative bases for the admissibility of evidence received at trial refused because the argument was not presented to the trial court).

■ We are unable to determine from this record whether appellants would have been able to persuade the trial court, through cross-examination or rebuttal evidence, that a proper foundation could not be presented for admissibility of the entries for the truth of the matter asserted under the co-conspirator exception. Under these circumstances, we cannot sustain the admission of the entries under this theory. Even if we assume arguendo that the entries are admissible under the co-conspirator exception, from the record now before us, the admission of the declarations of unidentified persons for the truth of the matter asserted violated the Confrontation Clause of the Sixth Amendment because the government failed to present evidence that the declarants were unavailable.

■ In response to the government's petition for a rehearing, Ordonez and Hernandez-Garcia now argue that admission of the ledger entries for the truth of the matter asserted violated the Confrontation Clause of the Sixth Amendment. Where an accused claims that an out-of-court statement was received into evidence in violation of the Confrontation Clause, the record must show that the government produced the declarant or presented facts showing that such person was unavailable. *Ohio v. Roberts,* 448 U.S. 56, 65, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980). As noted above, the court admitted the ledger entries although the government was not able to identify the person who made the entries for March 4 and June 15. No evidence was offered in support of the admission of the ledger entries that these unidentified persons were not available to testify at trial or that a good faith effort had been made to obtain their testimony.

■ Thus, Ordonez and Hernandez-Garcia were convicted of substantive counts of possession of cocaine for distribution based on the out-of-court assertions of unidentified persons who were never subjected to confrontation or cross-examination and whose unavailability was never demonstrated. The use of this evidence clearly violated the first prong of the test set forth in *Ohio v. Roberts.* "[W]hen a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable." 448 U.S. at 66, 100 S.Ct. at 2539.

■ The submission of the ledger entries to the jury under these circumstances also failed to comply with the second aspect of the Supreme Court's test for the admissibility of extrajudicial statements set forth in *Ohio v. Roberts.* Once the declarant is shown to be unavailable, the government must prove that the declarant's assertions are trustworthy. 448 U.S. at 65, 100 S.Ct. at 2538. "Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." 448 U.S. at 66, 100 S.Ct. at 2539. In *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), the Supreme Court "[did] not question the validity of the co-conspirator exception applied in the federal courts." 400 U.S. at 80, 91 S.Ct. at 215. The Court found no violation of the Confrontation Clause in the use of a co-conspirator's statement under Georgia's rule, which admits assertions that evidence an attempt to conceal the offense. In determining whether the Confrontation Clause has been violated where a co-conspirator's statement is offered, a trial court must find that the circumstances under which the statements were made present a sufficient "indicia of reliability" so that "the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement." *California v. Green,* 399 U.S. 149, 161, 90 S.Ct. 1930, 1936, 26 L.Ed.2d 489 (1970).

In *Dutton v. Evans,* the Court tested the reliability of a co-conspirator's statement under four indicia:

1. Did the statement contain assertion of past fact?

2. Did the declarant have personal knowledge of the facts he related?

3. Did the government's evidence exclude the possibility that declarant acted upon a faulty recollection?

4. Did the circumstances under which the assertion was made provide any reason to believe that the declarant misrepresented the truth? 400 U.S. at 88–89, 91 S.Ct. at 218–219.

In the instant matter, the government failed to present any evidence to demonstrate the reliability of the entries in the ledger under the criteria set forth in *Dutton*.

First. We cannot determine from the ledger entry whether the declarant recorded past fact or present fact.

Second. The government failed to present any evidence from which it can be determined whether the declarant had personal knowledge of the facts he recorded.

Three. Because the declarant was not identified, the trier of fact could not determine whether the entries reflected clear or faulty recollection.

Four. No evidence was offered by the government to show that the declarant's statements were truthful.

The government correctly notes that in other circuits "[o]nce a statement falls within a well-known accepted exception to the hearsay rule, such as the co-conspirator's exception, it is *per se* admissible without violating the Confrontation Clause." Among the cases cited for this principle is

1. We have found one case from this circuit which in dictum suggests that "statements which fall into 'firmly rooted' exception to the hearsay rule presumptively possess sufficient indicia of reliability so as to satisfy the confrontation clause." *United States v. Bernal,* 719 F.2d 1475 at 1479 (9th Cir.1983). Before making this observation, however, the panel noted "Bernal does not seem to challenge admissibility of that statement on appeal, and so may have waived any confrontation clause objections." 719 F.2d at 2479.

The court, in *Bernal* did not cite or discuss the law of this circuit set forth in *Perez, Snow* or *Adams*. We assume that since Bernal did not raise any violation of the confrontation clause

*Ottomano v. United States,* 468 F.2d 269, 273 (1st Cir.1972), *cert. denied,* 409 U.S. 1128, 93 S.Ct. 948, 35 L.Ed.2d 260, *reh. denied,* 410 U.S. 948, 93 S.Ct. 1383, 35 L.Ed.2d 616 (1973). This court expressly refused to adopt the *Ottomano* rule in *United States v. Snow,* 521 F.2d 730, 734 n. 2 (9th Cir.1975) and in *United States v. Perez,* 658 F.2d 654, 660 n. 5 (9th Cir.1981).

The rule followed in this circuit was first expressed in *United States v. Adams,* 446 F.2d 681 (9th Cir.1971). In *Adams* we stated:

> While the Sixth Amendment's Confrontation Clause and the evidentiary hearsay rule stem from the same source, the Supreme Court has never equated the two. It follows that application of a recognized hearsay exception does not necessarily evidence compliance with the Confrontation Clause.

*Id.* at 683.

Recently, we summarized the reliability inquiry which must be undertaken by the trial court prior to determining admissibility as follows:

> The factors considered include (1) whether the statements or assertions of past fail, (2) whether the declarant had personal knowledge concerning the crime, (3) the possibility of faulty recollection, and (4) whether the circumstances suggest that the declarant misrepresented the defendant's role.

*United States v. Tille,* 729 F.2d 615 at 621 (9th Cir.1984).[1]

in appeal, the court was not called upon to reconcile its dictum with their express holdings.

Chief Justice Marshall long ago cautioned against reliance on dictum:

> It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before this court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on

We noted in *Perez* that "[a]ll four [*Dutton*] elements need not be present in order to satisfy the confrontation clause. In some circumstances, a statement may be admitted over confrontation clause objections even if it does not pass scrutiny under each prong of the *Dutton* test. See *Snow*, 521 F.2d at 734–35." *Perez* at 661.

In *Snow* we concluded that the co-conspirator's statements were trustworthy because two of the four *Dutton* factors were applicable. In the matter before us, because of the absence of a proper objection, no evidence was presented to the trial court to show that *any* of the *Dutton* factors were applicable or that other indicia of reliability were present.

The government, in its petition for a rehearing and suggestion for rehearing en banc, states that "[t]he recent decision of *United States v. DeGudino*, 722 F.2d 1351 (7th Cir.1983) supports the admissibility of drug ledgers under the reliability standard." This statement is quite misleading. The issue of reliability under the Confrontation Clause was not before the court in *DeGudino*. There is no discussion in *DeGudino* of the admissibility of the statements for the truth of the matter asserted under the Confrontation Clause. It should also be noted that the only case cited in *DeGudino* is *United States v. Wilson*, 532 F.2d 641 (8th Cir.), *cert. denied*, 429 U.S. 846, 97 S.Ct. 128, 50 L.Ed.2d 117 (1976). In *Wilson*, in holding that the authenticity of certain documents had been established, the court observed that "the notebooks were not offered to prove the truth of the facts asserted therein." *Id.* at 645.

The government also failed to point out to this court that the Seventh Circuit follows the *Ottomano* per se rule i.e., the *Dutton* factors are inapplicable if the evidence consists of the declaration of a co-conspirator. *United States v. Papia*, 560 F.2d 827, 836 n. 3 (7th Cir.1977). As set forth above, this circuit has repeatedly rejected the *Ottomano* rule. Until *Perez* and *Snow* are overturned by this court, sitting en banc, we must apply the *Dutton* factors. The court in *DeGudino* was simply not required to consider *reliability* under the Confrontation Clause according to the law of the Seventh Circuit. The views expressed in *DeGudino* are of no value to us under these circumstances.

Based solely on the record before us, we conclude that, even if we assume that the statements were admissible as the declarations of a co-conspirator, they were inadmissible under the Confrontation Clause.

### 3. *Foundational Requirements for Admissibility of Business Records*

The government also argues that the ledger entries were business records which provide "substantial evidence corroborating the admissions contained in the ledgers." The government appears to be arguing as follows:

1. The ledger entries are business records.

2. Business records are trustworthy.

3. The ledger entries contain admissions in addition to a record of daily business transactions.

4. Therefore, the ledger entries are admissible as business records to corroborate any admissions they contain.

The only authority cited for this novel proposition is *United States v. Licavoli*, 604 F.2d 613 (9th Cir.1979), *cert. denied*, 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980).

*Licavoli* is inapposite. There, the Court affirmed the conviction of an art gallery owner for the theft of a valuable painting.

---

all other cases is seldom completely investigated.
*Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 399, 5 L.Ed. 257 (1821).

We are satisfied that the panel in *Bernal* would have "investigated with care, and considered in its full extent" the law of this circuit reflected in *Perez, Snow*, and *Adams*, had the issue been briefed and presented to the court for disposition. Further, rather than ignore existing Ninth Circuit authority, and fashion a contrary rule, we are satisfied that the court in *Bernal* would have complied with Rule 35(a)(1) and sought a hearing en banc to maintain uniformity, had it been made aware of the law of the circuit.

One issue on appeal was whether an art appraisal was erroneously admitted into evidence under the business records exception. Fed.R.Evid. 803(6). The appellant did not argue that the government failed to establish the foundational requirements of this hearsay exception. Rather, he contended that the appraiser did not qualify as an expert witness pursuant to Fed.R.Evid. 702 and that the business records exception did not dispense with the expert witness requirements. The court disagreed. The Court reasoned that there was no need affirmatively to establish the appraisers expert qualifications because "Rule 803(6) expressly provides for the exclusion of a business record if the source of information indicates a lack of trustworthiness." *Id.* at 622. *Licavoli* simply did not address the issues before us.

■ The government's argument in support of admissibility is based on the false premise that the ledger entries qualify as business records. A hearsay statement is admissible as a business record pursuant to Fed.R.Evid. 803(6) if the following foundational facts are proved:

1. The writing is made or transmitted by a person with knowledge at or near the time of the incident recorded.

2. The record is kept in the course of regularly conducted business activity.

These facts must be shown by the testimony of the custodian or other qualified witness.

The record will not be admissible, however, if the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

■ The government failed to comply with the requirement of the business records exception to the hearsay rule.

The government did not produce the custodian of the records as a witness. No evidence was offered by any person that the records were kept by persons having personal knowledge of the facts recorded or that the entries were made at or near the time of the transaction. No evidence was presented to demonstrate that the persons who made the entries were truthful and had a clear recollection of the facts. The entries were made by many persons, some of them unidentified. The expert's opinion that these entries were business records was not supported by the foundational evidence required by Fed.R.Evid. 803(6).

The government failed to show that evidence of the ledger entries "falls within [the foundational requirements] of a firmly rooted hearsay exception." *Ohio v. Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539. The ledger entries were inadmissible as proof of the matter asserted for all of the reasons discussed above.

### B. *Prejudicial Effect of Evidence of Ledger Entries*

#### 1. *Counts 7 and 11*

■ We have concluded that the ledger entries were inadmissible under the Confrontation Clause as proof of the matter asserted because the government failed to demonstrate (1) the unavailability of the unidentified declarants, (2) the trustworthiness of their statements, and (3) the existence of the requisite foundational facts for admission under any exception to the hearsay rule.

The government forthrightly conceded at trial that, without the ledger entries, it could not prove that Ordonez and German Hernandez-Garcia were guilty of possession of cocaine for distribution as charged in Counts 7 and 11. We agree. Because the ledger entries were inadmissible as proof that appellants possessed cocaine for distribution, we must reverse Counts 7 and 11. There was no legally admissible evidence of their guilt of these crimes.

#### 2. *Continuing Criminal Enterprise*

■ We are also compelled to reverse Count 14, which charged Ordonez with occupying the position of an organizer, supervisor or manager of a continuing criminal enterprise in violation of 21 U.S.C. § 848. A person is engaged in a continuing criminal enterprise if he (1) commits a

felony as defined in subchapter I or II of Chapter 13 of Title 21, and (2) "such violation is part of a continuing series of violations." 21 U.S.C. § 848(b)(1) and (2). The term "series" as used in § 848 refers to "three or more federal narcotics law violations." *United States v. Valenzuela*, 596 F.2d 1361, 1367 (9th Cir.), *cert. denied*, 444 U.S. 865, 100 S.Ct. 136, 62 L.Ed.2d 88 (1979). At least two of the three narcotics law violations required to prove a violation of § 848—Counts 7 and 11—were based on the expert's interpretation of the ledger entries. As discussed above, this evidence was inadmissible under the Confrontation Clause when offered to prove the truth of matter asserted. No other legally sufficient evidence was offered that Ordonez had committed a series of narcotics law violations. That portion of the judgment which is dependent on proof of a violation of section 848 cannot stand.

### 3. *Conspiracy*

The government relied heavily on the expert's interpretation of the ledger entries to prove that Ordonez and German Hernandez-Garcia were guilty of conspiracy. Lyons testified that it was his "opinion that these records document the distribution of cocaine in very large quantities from late in 1980 and continuing on through September of 1981. They also document the movement of money that was paid for the cocaine. They also document some of the expenses incurred by the organization, and they document the payments made to members of the organizations."

In closing argument, the government fully exploited the evidence based on the ledger entries. The prosecutor told the jury "we have additional substantial evidence that there was a conspiracy, there was an organization, and those are the ledgers that you've heard so much about."

 For the reasons set forth above, the ledger entries were not admissible to prove the existence of a conspiracy. The use of this evidence to prove the truth of the statements contained in the ledger violated the Confrontation Clause. Where

there is a reasonable possibility that the admission of evidence in violation of the Confrontation Clause might have contributed to a conviction, the government has the burden of persuading an appellate court beyond a reasonable doubt that such error was harmless. *Schneble v. Florida*, 405 U.S. 427, 432, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 340 (1972); *United States v. Valle-Valdez*, 554 F.2d 911, 915 (9th Cir.1977). The ledger entries were characterized by the government's expert witness as the business records of a highly sophisticated international organization engaged in the distribution of cocaine. It is clear that this evidence, if true and admissible, conclusively proved the existence of a conspiracy. It was, therefore, highly prejudicial to the accused. It is possible that the evidence may have been sufficient to convince the jury of the existence of a conspiracy had the ledger entries not been admitted. We cannot say, however, that we are convinced beyond a reasonable doubt that the court's error in admitting the ledger entries was harmless. The prosecutor urged the jury to consider the statements in the entries as "substantial evidence" that a conspiracy existed. If the jury was persuaded by the government's argument concerning the weight they should give to the ledger entries, then it is very likely that this evidence contributed to the jury's finding that Ordonez and German Hernandez-Garcia were guilty of conspiracy.

Ordonez and German Hernandez-Garcia were entitled to a trial free from the improper admission of highly prejudicial evidence. It is evident to us from our independent review of this record that the admission of the ledger entries was not harmless error.

### 4. *Count 2*

German Hernandez-Garcia and Ordonez were convicted of Count 2, which charged them with possession with intent to distribute 8.8 pounds of cocaine seized during the October 30, 1982, search of the Palm Street residence. Ordonez was arrested elsewhere. The evidence disclosed that Ger-

man Hernandez-Garcia did not live at the Palm Street house. In fact, the government argued successfully before the district court that German Hernandez-Garcia and Ordonez lacked standing to challenge the search of the Palm Street residence.

■ As Hernandez-Garcia approached the house during the search he was pulled inside by one of the officers conducting the search. Thus, there was no evidence that Hernandez-Garcia and Ordonez had actual or constructive possession of the cocaine found during the search. They were convicted of Count 2 under a conspiracy theory. A member of the conspiracy can be convicted of any substantive crime committed by a co-conspirator during the course and in furtherance of a conspiracy. *Pinkerton v. United States,* 328 U.S. 640, 645–48, 66 S.Ct. 1180, 1183–85, 90 L.Ed. 1489 (1946). We have determined that the conviction of each appellant for conspiracy must be reversed, because prejudicial error was committed by the court in admitting evidence in violation of the Confrontation Clause. We must reverse Count 2 for the same reason. The convictions of appellants under Count 2 were also obtained through prejudicial exploitation of constitutional error.

### C. *Informer's Identity*

Hernandez-Garcia and Ordonez also seek reversal of the district court's order deny-

ing disclosure of the identity of the person whose information triggered the investigation which precipitated. this prosecution.

In support of their motion for disclosure of the informer's identity, appellants relied upon the affidavit of Los Angeles Police Officer Roberto B. Sanchez filed in support of the search warrant issued in this matter. Officer Sanchez alleged that on or about October 7, 1981, he received information from a confidential, reliable informer that "Jaime" was a major cocaine dealer who was presently selling large amounts of cocaine. Jaime had sold cocaine to the informer on ten occasions within the previous 60 days. The informer gave Officer Sanchez Jaime's telephone number. The telephone number was registered to Tito Lago at 18617 South Norwalk Boulevard, Artesia, California. Officer Sanchez observed the persons who entered the residence at this address. He obtained photographs of these individuals and showed them to the informer. The informer identified Antonio Hernandez as the person he knew as Jaime.

German Hernandez-Garcia, who uses the name Jaime Rivera, contends that the refusal of the court to disclose the identity of the informer was a denial of due process. He argues that based on Officer Sanchez' affidavit, the informer would have been a material witness to bolster his defense of mistaken identity.[2] The informer would

---

2. The record discloses that many persons suspected of being connected with the cocaine distribution organization used the name "Jaime". The following portion of the transcript is illustrative of this phenomenon:

VODNOY: Q. First of all, would it be fair to say that we have the name, Jaime?
LYONS: A. Yes, just the name, Jaime.
Q. Is there also a Jaime H.?
A. Yes, there is.
Q. Was there also a Jaime Salsa?
A. Yes, there is.
Q. Was there also a Jaime Toto?
A. A—
Q. Agent Lyons?
A. I am looking for that one.
Q. Jaime Toto?
A. Yes, there is.
Q. You found it?
A. Yes.
Q. Was there also a Primo Jaime, if you will look?

A. I believe so, yes.
Q. There are five variations I have on the Board here with the name, Jaime.
Is there any other than you came across other than one of these five?
A. There was also Jaime Hoinjer. There was a Jaime Medico.
Q. Is that a name?
A. Well, it is not a name, really.
Q. I am asking for names that you think are reasonable names or which stand for a name.
A. I think that is all I can remember at the moment or find.
Q. In your expert opinion are all one, two, three, four, five, six of these names referring to one person?
A. No, I don't believe they do.
Q. Is, for example, Jaime Toto the same as Jaime or Jaime H.?
A. I do not believe it is the same person.
Q. Is Jaime, Primo Jaime the same as Jaime Toto?

have been called to testify that Antonio Hernandez was the person known as "Jaime" who was involved with an organization that sold cocaine.

Ordonez asserts that the informer would have been a material witness to his defense to Count 14. It is Ordonez' position that the informer would have supported his theory that his role in the organization was menial and not that of a supervisor, manager, or organizer as alleged in the continuing criminal enterprise charge. Officer Sanchez' affidavit established that the informer knew the leaders of the enterprise, as well as its inner workings, hierarchy, and memberships. It is Ordonez' position that, based on the allegations in the affidavit, the informer would have testified that Jaime (Antonio Hernandez) was the leader of the organization.

The government opposed the motion for disclosure of the informer's identity. Affidavits from two law enforcement officers were submitted to the court for *in camera* review. We have read these affidavits. Neither contains any facts that address the factual questions raised by appellants. There were no facts in the affidavits submitted *in camera* that establish that German Hernandez-Garcia was the "Jaime" who was a major cocaine dealer who sold narcotics to the informer or that Ordonez, and not some other person, was the leader of the organization.

After reviewing this material, the district court stated:

> With respect to the disclosure and production of the informants, it is a balancing task, and defense counsel did articulate quite well the particular need for the disclosure. However, the information received in camera involves a strong concern for the public interest as well as the safety of that individual and that motion likewise will be denied.

The court's order is not clear. The court apparently concluded that German Hernandez-Garcia and Ordonez made a sufficient showing, based on Officer Sanchez' affidavit in support of the search warrant, that the informer's testimony would have been helpful to their defense. The court made no finding on the materiality of the informer's potential testimony after reviewing the government's *in camera* submission. As noted above, it is evident from our independent review of these materials that no facts were presented by the government which demonstrate that the informer would not be helpful to the defense. Thus, appellant's showing of materiality remains unrefuted.

In *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Supreme Court held that, where the government opposes disclosure of the identity of an informer, a trial judge must balance the public's interest in protecting the flow of information against the individual's right to prepare his defense. 353 U.S. at 62, 77 S.Ct. at 628. The Court declined to formulate a fixed rule to be applied with respect to disclosure. Instead, the Court stated: "Whether a proper balance renders non-disclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors. 353 U.S. at 62, 77 S.Ct. at 629.

We cannot determine from the trial court's brief comments whether these factors were given their proper weight. Articulation of these factors in express findings in disclosure cases would facilitate the work of the reviewing court and avoid un-

A. I do not believe it is.
Q. I take it that Primo Jaime would not be the same as Jaime or Jaime H.?
A. That is correct.
Q. So that at least at a minimum there are three Jaime's on that list, is that correct, three different people?
A. That is correct.

Q. Did you find the name, Jaime R., in any of the books and records?
A. Not that I can recall.
Q. Did you find the name, Jaime River, first and last name, on any of the books and records?
A. No, I did not.

necessary reversals. The balancing task imposed on trial courts by *Roviaro* is critical to the preservation of due process. The Supreme Court has instructed us that: "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." 353 U.S. at 60–61, 77 S.Ct. at 627–628.

■ We cannot discern from this record why the district court determined that the privilege must *not* give way under the circumstances of this case. If the district court believed that disclosure would have been "highly relevant and might have been helpful to the defense" (353 U.S. at 63–64, 77 S.Ct. at 629–630) of the appellants, it was error of constitutional dimension to deny disclosure solely because of the potential danger to the informer. If disclosure is essential to a fair determination of the case "the trial court may require disclosure, and, if the government withholds the information, dismiss the action." 353 U.S. at 61, 77 S.Ct. at 628.

■ In this matter, we are left to guess about the nature of the evidence within the informer's knowledge which appears to have convinced the trial court that there was a "particular need for disclosure." Under the circumstances, we believe the court's failure to grant the motion for disclosure was prejudicial error. Upon remand, the district court should conduct *de novo in camera* proceedings and require that a complete record be made of its *in camera* proceedings so that we can determine if the *Romero* balancing test was properly applied to the facts presented to the court. *See United States v. Fischer,* 531 F.2d 783, 788 (5th Cir.1976) (Reversal is required where an appellate court cannot determine from the record whether the informer's testimony might ensure a fair trial).

■ We recognize that the conducting of *in camera* proceedings, where disclosure is requested, is left to the discretion of the trial court. We are also mindful of the extraordinary deviation from the customary safeguards provided by the Confrontation Clause and the adversary system which results from a reliance on *in camera* proceedings that are conducted in the absence of the defendant and his counsel. During an *in camera* hearing, the district court is thrust into the unaccustomed responsibility of serving as a surrogate advocate for the defendant without being aware of his confidential communications or able to seek his advice about questions that may reveal matters helpful to the defense.

Judge McGlaughlin of the Third Circuit expressed this dilemma as follows:

> [A] trial judge is not privy to the activities or cognition of an informer and unless the court is aided by evidence … it must indulge in a judicial guessing game and rule in favor of one interest at the possible expense of the other.

*United States v. Day,* 384 F.2d 464, 470 (3d Cir.1967) (McGlaughlin, J., concurring).

The procedure selected by the trial court should provide a substantial equivalent to the rights available to a criminal defendant under the fifth and sixth amendment.

In the instant matter the informer was not produced for interrogation by the court. Counsel for the accused were not allowed to be present nor were they requested to submit questions for the assistance of the court in testing the memory and credibility of the informer. Instead, the trial court relied on hearsay statements and the factual conclusions of an officer who had spoken to the informer at some unspecified time. Officer Sanchez' affidavit is silent as to whether the informer had been asked if German Hernandez-Garcia was the "Jaime" the major cocaine dealer from whom he had purchased cocaine ten separate times. No reference to Ordonez appears in Officer Sanchez' affidavit. The government's submission to the court for in camera review failed to address the issue of most concern to the accused. Did the informer possess information which would have been helpful and relevant to the presentation of a defense?

This court has noted that interrogation of the informer by the court is an appropriate means of accommodating the due process interests of the defendant and the government's concern for the safety of the informer. *United States v. Anderson*, 509 F.2d 724, 730 (9th Cir.), *cert. denied*, 420 U.S. 910, 95 S.Ct. 831, 42 L.Ed.2d 840 (1975). In *United States v. Moore*, 522 F.2d 1068 (9th Cir.1975), *cert. denied*, 423 U.S. 1049, 96 S.Ct. 775, 46 L.Ed.2d 637 (1976), we commented on the importance of the presentation of the informer for interrogation by the trial court as follows: "Through disclosure of the informant's identity to the trial judge, and such subsequent inquiries by the judge as may be necessary, the Government can be protected from any significant, unnecessary impairment of necessary secrecy, yet the defendant can be saved from what could be serious police misconduct." 522 F.2d at 1073.

In the *Anderson* case we also suggested that the trial court should give consideration to defense counsel's participation. "[T]he trial judge, in the exercise of his discretion, can conduct an in camera hearing to which the defense counsel, but not the defendant, is admitted. The defense counsel could then be permitted to participate in the in camera proceedings and to cross-examine the in camera witness or witnesses." 509 F.2d at 729.

Requiring the informer to appear at an in camera hearing was approved in *United States v. Jackson*, 384 F.2d 825 (3d Cir. 1967), *cert. denied*, 392 U.S. 933, 88 S.Ct. 2294, 20 L.Ed.2d 1391 (1968) in the following language: "The advantage of the procedure is that it enables the court to view with a keener perspective the factual circumstances upon which it must rule and attaches to the court's ruling a more abiding sense of fairness than could otherwise have been realized." 384 F.2d at 827.

To insure that the informer is subjected to a vigorous or searching examination, some trial courts have permitted defense counsel to submit a set of questions to be propounded by the court. *United States v.*

*Rawlinson*, 487 F.2d 5 (9th Cir.1973), *cert. denied*, 415 U.S. 984, 94 S.Ct. 1579, 39 L.Ed.2d 881 (1974); *see also United States v. Long*, 533 F.2d 505 (9th Cir.), *cert. denied*, 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 92 (1976).

We do not intend to prescribe the in camera procedure to be followed by the district court in this matter in the event of a retrial. Instead, we have suggested alternative procedures which will assist the court in meeting the responsibility imposed by *Roviaro* and the due process clause.

■ The procedure followed by the district court in this matter did not produce sufficient trustworthy evidence to permit this court to decide that the informer's testimony would not have been helpful to the appellants. The order denying disclosure must be reversed. The error was prejudicial in light of the district court's comment that a need for disclosure was articulated. This need was not refuted by the government's in camera presentation.

### D. *Interception of Telephone Calls*

■ During the search of the Norwalk premises, an officer answered incoming telephone calls. One caller ordered a kilo of cocaine. Ordonez alleges that the interception of these telephone calls was improper and beyond the scope of the search warrant. We disagree. In *United States v. Gallo*, 659 F.2d 110 (9th Cir.1981), we held that an officer may intercept telephone calls while executing a search warrant if the calls are reasonably related to the purpose of the search. 659 F.2d at 114. We held in *Gallo* that the search warrant need not specifically authorize telephonic interceptions where the telephone is "highly necessary" to the illicit business conducted on the premises. *Id.* at 114. In *Gallo* we were concerned with telephone calls made to a bookmaking establishment. It is clear to us that the telephone is highly necessary to an unlawful organization selling cocaine out of private residences. No error occurred in admitting evidence of the incoming telephone calls.

### E. *Suppression of German Hernandez-Garcia's Statements*

German Hernandez-Garcia contends that the district court committed reversible error in denying his motion to suppress statements made at the Palm Street residence. He argues in his opening brief that "any statements made by the appellant prior to his being advised of his *Miranda* rights should have been suppressed by the district court." On May 25, 1982, the district court filed a written order suppressing "all statements made prior to the defendant [German Hernandez-Garcia] being advised of his *Miranda* rights..." The appellant is mistaken as to the state of the record.

### F. *Admissibility of the Tax Return*

 Ordonez complains of the admission of his tax returns for the years 1976 through 1979. We review evidentiary rulings to determine if the district court abused its discretion. *United States v. Kahan & Lessin Co.,* 695 F.2d 1122 (9th Cir. 1982). We find no abuse of discretion. The tax returns showed an annual income of between $18,000 and $26,000. The jury could properly infer from this evidence that the large sums paid on house rentals in 1981 must have come from an illegal source.

### G. *Validity of the Search Warrant*

 German Hernandez-Garcia and Ordonez also challenge the district court's determination that the affidavit in support of the search warrant contained sufficient facts to establish probable cause. This contention lacks merit.

We are satisfied from our review of the affidavit that it meets the requirements of *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The affidavit discloses that the police received information concerning a large scale cocaine distributing organization from a reliable informant which was based on his personal knowledge. This information was independently verified by police surveillance. The totality of the circumstances known to the officers raised a fair probability that a criminal enterprise was being conducted at the places to be searched. No error occurred in the denial of appellants' motions to suppress.

### H. *Alleged Instructional Error*

Ordonez complains that the court failed to give a lesser included offense instruction *sua sponte* on the continuing criminal enterprise charge. 21 U.S.C. § 848.

We need not reach this issue because we have determined that the judgment must be reversed as to each count. It would serve no useful purpose for us to analyze the applicability of an instruction on this issue since we do not know what evidence will be offered in the event of a retrial.

### CONCLUSION

The government has invited this court to review the entire record to determine whether there was sufficient circumstantial evidence independent of the ledger entries to establish reliability under the Confrontation Clause. We decline to do so.

The government correctly notes that the *Dutton* standards are not the only possible indicia of the reliability of an out of court declaration under the Confrontation Clause. *United States v. Fleishman,* 684 F.2d 1329, 1339 (9th Cir.) *cert. denied,* 459 U.S. 464, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982). *See United States v. Stearns,* 550 F.2d 1167, 1170–1172 (9th Cir.1977) ("[A] photograph may have probative value that is independent of amplification by other testimony").

 It is the duty of the trial court, however, to determine in the first instance, whether a proper foundation exists for the admission of evidence under the rules of evidence and the federal constitution.

Appellants did not alert the trial court by proper objection to the serious Confrontation Clause problem presented by the attempt of the government to introduce the declarations of an unknown person for the truth of the matter asserted. As a direct result of trial counsel's omission, the dis-

trict court made no findings concerning the presence of sufficient foundational facts, independent of the expert's interpretation of the coded entries, to establish their trustworthiness under *Dutton*. Counsel's failure to make such an objection has compelled us to review this constitutional question under the plain error rule. A further consequence of defense counsel's error is that the government may have been able to present sufficient evidence and to articulate a theory which would satisfy a trial court that the entries were trustworthy.

■ We have determined that the district court committed prejudicial error in denying disclosure of the identity of the informer. Thus, this matter must be remanded for a new trial. We believe it would be unfair, under the circumstances of this case, to bar the government from any further attempt to use these entries for the truth of the matter asserted, if legally sufficient evidence is available, which may satisfy the requirements of the co-conspirators exception and the trustworthiness requirements of the Confrontation Clause and the law of this circuit. Therefore, in the event that the government elects to try this matter again, the trial court is directed to hold de novo proceedings concerning the admissibility of the ledgers, if offered for the truth of the matter asserted, and to make the findings required by the authorities in this opinion so that a proper record will be available for appellate review.

The judgment is REVERSED as to each count.

NORRIS, Circuit Judge, concurring in part:

I agree with the majority that the conviction must be reversed because the district court committed prejudicial error in denying disclosure of the identity of the informer. I write separately on the issue of the admissibility of the ledgers into evidence, however, because I believe that the Ninth Circuit cases relied upon by the majority, although controlling precedent, are incorrectly decided.

The majority correctly notes that the Ninth Circuit, unlike other circuits, has refused to adopt the rule that once a statement falls within a well-established exception to the hearsay rule, it is *per se* admissible without violating the confrontation clause of the sixth amendment.[1] *See, e.g., United States v. Tille*, 729 F.2d 615, 621 (9th Cir.1984); *United States v. Arbalaez*, 719 F.2d 1453, 1459 (9th Cir.1983); *United States v. Perez*, 658 F.2d 654, 660 & n. 5 (9th Cir.1981). In this circuit, only *United States v. Bernal*, 719 F.2d 1475, 1479 (9th Cir.1983), has accepted the rule of *per se* admissibility. In my view, *Bernal* takes the correct approach to this question. The rule that "statements which fall within a 'firmly rooted' exception to the hearsay rule presumptively possess sufficient indicia of reliability so as to satisfy the confrontation clause," *id.*, is clearly mandated by Supreme Court precedent and should be adopted by this circuit.

I believe that the Ninth Circuit cases rejecting *per se* admissibility are based on a misreading of *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), and *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). In *Ohio v. Roberts*, the Supreme Court held that when a hearsay declarant is not present for cross-examination at trial, the confrontation clause requires a showing that the declarant is unavailable and that the statement bears adequate "indicia of reliability." 448 U.S. at 66, 100 S.Ct. at 2539. The

1. For cases adopting the rule that statements which fall within a "firmly rooted" exception to the hearsay rule presumptively possess sufficient indicia of reliability so as to satisfy the confrontation clause, *see United States v. Lurz*, 666 F.2d 69, 80–81 (4th Cir.1981), *cert. denied*, 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982); *United States v. Peacock*, 654 F.2d 339, 349–50 (5th Cir.1981); *United States v. Papia*, 560 F.2d 827, 836 n. 3 (7th Cir.1977); *United States v. McManus*, 560 F.2d 747, 750 (6th Cir. 1977), *cert. denied*, 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 798 (1978); *Ottomano v. United States*, 468 F.2d 269, 273 (1st Cir.1972), *cert. denied*, 409 U.S. 1128, 93 S.Ct. 948, 35 L.Ed.2d 260 (1973); *United States v. Cox*, 449 F.2d 679, 688–89 (10th Cir.1971), *cert. denied*, 406 U.S. 934, 92 S.Ct. 1783, 32 L.Ed.2d 136 (1972).

Court then stated flatly, however, that "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Id.* In *Ohio v. Roberts*, the Court dealt with the well-established "former testimony" exception to the hearsay rule—recognized in the Federal Rules of Evidence. Fed.R.Evid. 804(b)(1). In *Dutton v. Evans*, by contrast, the Court dealt with an unusual Georgia state co-conspirator hearsay exception which, unlike the federal rule, allows into evidence a co-conspirator's out-of-court statement made during the *concealment* phase of the conspiracy. 400 U.S. at 78, 91 S.Ct. at 214. Thus, it is only in the context of a controversial, not "firmly rooted," hearsay exception that the Supreme Court has required a showing of particular "indicia of reliability." *Id.* at 89, 91 S.Ct. at 220.

Our cases do not adequately recognize the significance of the distinction between the "firmly rooted" exception involved in *Ohio v. Roberts* and the unusual exception at issue in *Dutton*. Only when, as in *Dutton*, a court deals with an exception to the hearsay rules which is not widely recognized must a court go beyond the question of admissibility under the hearsay rules in order to resolve the confrontation clause issue. In the present case, we are dealing with the well-established co-conspirator exception, an exception included within the Federal Rules of Evidence. Fed.R.Evid. 801(d)(2)(E). Therefore, our decision should be controlled by the Supreme Court's clear statement that "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Ohio v. Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539. *Dutton v. Evans* should not enter into our analysis.

In my view, the correct approach to the question whether the ledgers in this case are admissible is the two-step analysis set out in *United States v. DeGudino*, 722 F.2d 1351, 1355–56 (7th Cir.1983). First, the ledgers must be authenticated or identified. Fed.R.Evid. 901(a). Second, the ledgers must be shown to be co-conspirator

statements admissible under rule 801(d)(2)(E) of the Federal Rules of Evidence. *DeGudino* makes clear that circumstantial evidence may serve both to authenticate documents even when the declarant is unknown and to establish documents as the statements of co-conspirators. *United States v. DeGuidino*, 722 F.2d at 1355–56.

In *DeGudino*, the court discussed whether "pollo lists," also known as drug ledgers, were sufficiently reliable to be admitted under the co-conspirator's exception. As in the case before us, the authors of the ledgers in *DeGudino* were unknown. The court concluded, however, that there was ample circumstantial evidence both to authenticate the ledgers and to admit them under the co-conspirator's exception.

The court in *DeGudino* considered first the question of authenticity under rule 901(a) of the Federal Rules of Evidence. The court found that

> [t]he contents of the pollo lists consist of names of smuggled aliens and their sponsors, dates, telephone numbers, dollar figures, and records of payment. Given the testimony outlining the smuggling techniques of the operation, the contents of the pollo lists provided prima facie evidence that they were written [sic] by someone involved in the smuggling conspiracy. Furthermore, the lists were seized from the Castillo house, the headquarters of the operation, and this also provides prima facie evidence of their authenticity.

*Id.* at 1355.

The ledgers at issue in the case now before us identified the organization's members and listed disbursements of cash and cocaine. The ledgers, bearing the fingerprints of the defendants, were found in a house serving as a headquarters of the operation. Undercover transactions with members of the conspiracy and expenditures by defendants were correlated to entries in the ledgers. As in *DeGudino*, the defendants here did not rebut this evidence authenticating the ledgers as written by

someone in a conspiracy to distribute drugs.

*DeGudino* next turned to the second inquiry: whether the pollo lists were admissible under the co-conspirator's exception. The court found that

the contents of the lists clearly show that their author was familiar with the workings of the conspiracy. The fact that the lists contain dates and records of payment is evidence that they were written during the course of conspiracy. The names, dollar figures, and telephone numbers are evidence that the lists were utilized to maintain information necessary to continue the smuggling activities of the conspiracy. Since this evidence was not countered by any evidence that the lists were made at any time other than during the conspiracy or that the lists were not made to further the conspiracy, we hold that the lists were admissible as co-conspirator's statements.

*Id.* at 1356.

Similar circumstantial evidence regarding the purpose, contents and author(s) of the ledgers exists in the present case. Because this evidence was not rebutted by the defendants, the ledgers here are admissible as co-conspirator's statements.

Although their argument is unclear, appellants apparently also contend that even if the ledgers are admissible for the purposes of proving the existence of the conspiracy, the ledgers still must surmount another "reliability" inquiry in order to sustain a conviction on the substantive counts. Appellant's Supplemental Brief at 8. This argument is without merit. The cases cited by appellants in support of this proposition actually are concerned with the different question whether an adequate foundation had been laid to establish admissibility of statements under the co-conspirator exception. *United States v. Weiner,* 578 F.2d 757, 768 (9th Cir.1978); *United States v. Robinson,* 651 F.2d 1188, 1196 (6th Cir.1981).

In sum, I believe that the Ninth Circuit cases on the confrontation clause issue are in conflict with *Ohio v. Roberts,* 448 U.S.

56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), and with the cases of other circuits. The isolation of this circuit on the question of *per se* admissibility is a mistaken, indeed puzzling, stance. Since the Supreme Court drafted the hearsay rules included within the Federal Rules of Evidence, we can assume that the Court did not believe these rules violated the confrontation clause.