**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Alfonso BERNAL, Defendant-Appellant.**

**No. 83–1035.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 14, 1983.

Decided Nov. 10, 1983.

William K. Shipley and Hector C. Perez, Shipley & Perez, Newport Beach, Cal., for defendant-appellant.

Donald J. Campbell, Asst. U.S. Atty., Las Vegas, Nev., for plaintiff-appellee.

Before MERRILL, CHOY, and NORRIS, Circuit Judges.

CHOY, Circuit Judge:

Alfonso Bernal was convicted of conspiracy to possess and distribute cocaine (18 U.S.C. § 371, 21 U.S.C. § 841(a)(1)), attempt to distribute cocaine (18 U.S.C. § 2, 21 U.S.C. §§ 841(a)(1), 846), and unlawfully carrying a firearm during the commission of a felony (18 U.S.C. § 924(c)(2)). Concurrent sentences were imposed. We affirm the drug convictions but reverse the firearm conviction.

## I. STATEMENT OF FACTS

On January 21, 1980, agents from the Drug Enforcement Administration (DEA) arranged for Bertram Brucker, a paid informant, to purchase one pound of cocaine from Victor Corsey in Las Vegas. Two DEA agents waited outside the house and acted as if Brucker was buying the cocaine for them. Other agents set up surveillance around the Corsey residence.

When Brucker went in to see Corsey, Corsey told him that he did not have cocaine but that he would try to contact his connection. Corsey then made some telephone calls and told Brucker that he should return in an hour to pick up the cocaine.

DEA agents then followed Corsey as he drove to Bernal's home, picked up Bernal, and drove back to his own residence. Corsey went back in his house, apparently carrying a small bundle under his shirt. Bernal stayed in the car.

Brucker went in to see Corsey again, and Corsey lifted his shirt to display a bag of white powder. They both went upstairs to weigh the bag on a triple-beam scale. Brucker then left, purportedly to get the money for the transaction. DEA agents then moved in and arrested Corsey and Bernal.

Protesting his innocence, Bernal agreed to a search of his residence. Bernal executed a "Consent to Search" form, and two DEA agents, along with two Las Vegas police officers, searched Bernal's home. The agents entered an upstairs bedroom and recovered suitcases containing marijuana residue, a small scale with marijuana residue on it, a small calculator with an attached notation pad, a baby bassinet, plastic baggies, zip-lock bags, $8,600 in cash, some white powder, and a small quantity of cocaine contained in glass vials.

At trial, a DEA agent qualified as an expert witness testified that the items seized in Bernal's apartment were paraphernalia commonly used in distributing cocaine—vials for gram quantities, sandwich bags for ounces, and zip-lock bags for pounds.

Also at trial, one of the two DEA agents who had arrested Bernal testified to a conversation that he had with the defendant when he bumped into him on August 12, 1982, at the federal building:

[Agent] LOVATO: How are you doing?

BERNAL: Not so good, thanks to you.

LOVATO: Why, what's the problem?

BERNAL: You know what the problem is, you put me into it.

LOVATO: That's not true, you placed yourself in it.

BERNAL: No I didn't, you don't believe me, but I tell you I'm just the middleman in this, and the other people put me in it. Now I'm going to lose everything because of them.

LOVATO: Well, why don't you turn state's evidence and help us out and we'll help you in return.

BERNAL: What do you want me to do?

LOVATO: It's not what I want you to do, it's what you want to do. You know these people, how much they're dealing, and when.

BERNAL: What do you want me to do, lie? I'm telling you, Craig, I was just the middleman, you think I'm a big dealer, I'm not. I did what they told me to and I'll tell you this, as soon as this is over I'll help you get them, but for now I want this over first.

(E.R. 129–30).

Upon cross-examination of another DEA agent (Lucido), Lucido was allowed to testify that Corsey said to him that the cocaine

was already there at his home. This statement was admitted under Fed.R.Evid. 806 to impeach Corsey as an out-of-court declarant since Brucker had already said that Corsey told him that he did not then have the cocaine. On redirect, Lucido was allowed to testify over objection that Corsey stated on the same day that Bernal told him that Bernal would have an associate deliver a pound of cocaine to Corsey's residence in a couple of hours. The district court admitted this statement under rule 806, on the theory that the prosecutor should be allowed to bolster the credibility of an out-of-court declarant whose credibility had been attacked by an extrajudicial statement.

At the close of the Government's evidence, Bernal moved for a directed verdict of acquittal as to the firearm count. At that point, the Government's case consisted of evidence that the gun, a .357 magnum, had been found either atop or under the seat in Corsey's car at the time Bernal was arrested. Both parties stipulated that the gun was not registered with Las Vegas police.

## II. DISCUSSION

### A. The "Dope Office" Evidence

■ Bernal challenges the admission of narcotics distribution paraphernalia and a large amount of cash found in his home. The existence of such equipment has been held to be "more than only slightly" probative of intent and state of mind to enter upon a narcotics distribution scheme. *United States v. Bermudez*, 526 F.2d 89, 95–96 (2d Cir.1975), *cert. denied*, 425 U.S. 970, 96 S.Ct. 2166, 48 L.Ed.2d 793 (1976). The same has been said of large amounts of unexplained cash. *United States v. Tramunti*, 513 F.2d 1087, 1105 (2d Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975); *see United States v. Jabara*, 618 F.2d 1319, 1329 (9th Cir.), *cert. denied*, 446 U.S. 987, 100 S.Ct. 2973, 64 L.Ed.2d 845, 449 U.S. 856, 101 S.Ct. 154, 66 L.Ed.2d 70 (1980). The evidence is thus relevant to both conspiracy and attempt.

■ Bernal argues that evidence of distribution paraphernalia reeking of marijuana is evidence of "prior bad acts" which is inadmissible under Fed.R.Evid. 404(b). The so-called "dope office" evidence, however, was not character evidence. The Government offered it to prove that Bernal was a participant in a drug distribution conspiracy. *United States v. Carson*, 702 F.2d 351, 368 (2d Cir.1983); *Bermudez*, 526 F.2d at 95 n. 3. Thus, Rule 404(b) does not apply.

■ Bernal argues that Rule 403 should have been applied to exclude this evidence. The proper standard of review is abuse of discretion. *United States v. Young*, 573 F.2d 1137, 1139–40 (9th Cir.1978). The relevance of the evidence outweighed any prejudice to Bernal. *United States v. Magnano*, 543 F.2d 431, 437 (2d Cir.1976), *cert. denied*, 429 U.S. 1091, 97 S.Ct. 1100, 51 L.Ed.2d 536 (1977). There was thus no abuse of discretion.

### B. The Chance Conversation with Lovato

■ Bernal argues that incriminating statements he made during a chance conversation between him and DEA Special Agent Lovato were "deliberately elicited from him after he had been indicted and in the absence of his counsel." *Massiah v. United States*, 377 U.S. 201, 206, 84 S.Ct. 1199, 1203, 12 L.Ed.2d 246 (1964). Bernal's statements were spontaneous and admission of them does not violate Bernal's right to counsel. *United States v. Lyon*, 397 F.2d 505, 510 (7th Cir.), *cert. denied*, 393 U.S. 846, 89 S.Ct. 131, 21 L.Ed.2d 117 (1968); *United States v. Accardi*, 342 F.2d 697, 700–01 (2d Cir.), *cert. denied*, 382 U.S. 954, 86 S.Ct. 426, 15 L.Ed.2d 359 (1965). Nor could they be excluded under Fed.R.Evid. 410(4) dealing with plea negotiations, because Lovato is not a prosecutor.

### C. Corsey's Out-of-Court Statements

Bernal challenges the admission of certain hearsay statements made by Corsey, a co-conspirator, concerning whether the pound of cocaine was already in Corsey's home at the time the government informant requested cocaine. The absence of the cocaine from Corsey's home at the time leads to the inference that Bernal supplied it.

At trial, three of Corsey's statements were introduced: his statement made to DEA Agent Brucker saying that there was no cocaine in his home; his statement made to Lucido saying that there was; and his statement made to Lucido on the same day saying that there was none.

■ The first statement came in properly under the co-conspirator exception, Fed.R. Evid. 801(d)(2)(E). Bernal does not seem to challenge admissibility of that statement on appeal, and so may have waived any confrontation clause objections. Even if there was no waiver, the Supreme Court has stated that statements which fall within a "firmly rooted" exception to the hearsay rule presumptively possess sufficient indicia of reliability so as to satisfy the confrontation clause. *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). Thus, the first statement was properly admitted.

■ The third statement, therefore, was also properly admitted. It is a consistent statement supporting Corsey's credibility and is thus admissible under Fed.R.Evid. 806. It repeats the first statement, and so could hardly be termed "crucial" or "devastating" to the defense. *United States v. Adams,* 446 F.2d 681, 684 (9th Cir.), *cert. denied,* 404 U.S. 943, 92 S.Ct. 294, 30 L.Ed.2d 257 (1971); *see Dutton v. Evans,* 400 U.S. 74, 87, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970). Thus, the admission of that statement did not violate the confrontation clause.

### D. *Unlawful Possession of a Firearm*

■ Bernal contends that there is insufficient evidence to sustain his conviction under 18 U.S.C. § 924(c)(2). Unlawfulness of possession of a weapon may be determined by state or local law. *United States v. Garcia,* 555 F.2d 708, 711 (9th Cir.1977); *United States v. Howard,* 504 F.2d 1281, 1285–86 (8th Cir.1974). Here, the Government argues that the possession violated Nev.Rev.Stat. § 202.350(1)(b)(3), which prohibits a person from carrying a gun "concealed upon his person," and a Clark County ordinance, Clark County Ord. § 12.04.200, which forbids a person "to own or have in

his possession" a concealable weapon within an unincorporated area of Clark County.

■ The only evidence connecting Bernal with the gun is the DEA agents' testimony that the gun was found on the seat of Corsey's car next to Bernal. The Supreme Court of Nevada has held in *Woodall v. State,* 97 Nev. 235, 627 P.2d 402 (1981), that there was insufficient evidence to sustain a conviction under a statute prohibiting ex-felons from possessing a firearm when the firearm was found in a truck occupied by both the defendant and another person, on the theory that the presence of a gun in a vehicle occupied by more than one person does not indicate who owns or possesses the gun. *Id.* at 236, 627 P.2d at 403. The statute involved in *Woodall* was Nev.Rev. Stat. § 202.360(2), which forbids an ex-felon to "own or have in his possession or under his custody or control" a firearm. This decision controls Nev.Rev.Stat. § 202.-350 and Clark County Ord. § 12.04.200, both of which have a possession element narrower in scope than that in Nev.Rev.Stat. § 202.360. Here, the same circumstances are present. Bernal was arrested in Corsey's car which Corsey had just driven; the gun might have been Corsey's. Hence, the evidence is insufficient to prove that Bernal possessed the weapon in violation of Nevada law. We therefore reverse the conviction under 18 U.S.C. § 924(c)(2).

### III. CONCLUSION

The judgment of conviction as to Counts I and II (conspiracy and attempt to distribute cocaine) is AFFIRMED. The conviction as to Count III (carrying a firearm during commission of a felony) is REVERSED with direction to enter judgment of acquittal notwithstanding the verdict.