942 F.2d 794
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Augustine HERNANDEZ-LARA, Defendant-Appellant.
 No. 90-50344.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 7
, 1991.
Decided Aug. 15, 1991.
 
 Before PREGERSON, CYNTHIA HOLCOMB HALL and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Augustine Hernandez-Lara ("Appellant") appeals his conviction for being a deported alien found in the United States in violation of 8 U.S.C. § 1326 (1988), and his sentence under the Sentencing Guidelines. We have jurisdiction pursuant to 28 U.S.C. § 1291 (1988), and affirm.
 
 I.
 
 3
 Appellant, who is a citizen of Mexico, was arrested on October 2, 1989, while crossing the international border near San Ysidro, California. While in custody, Appellant admitted that he had entered the United States illegally. Investigating officers determined that Appellant had at least five criminal convictions, and had been deported from the United States on August 29, 1989. Appellant was indicted for violating 8 U.S.C. § 1326 (1988).
 
 
 4
 A jury trial commenced on January 11, 1990. During a break in the trial, deputy United States Marshal Alfred Martinez ("Martinez") initiated a conversation with Appellant outside the presence of counsel. Martinez subsequently wrote a letter to the court detailing the conversation. At the sentencing hearing, Martinez repeated the statements in the letter under oath.
 
 
 5
 Appellant was found guilty, and was sentenced on May 3, 1990. This timely appeal followed.
 
 II.
 
 6
 Appellant claims that the statement he made to Martinez was made in violation of Miranda and that the district judge should therefore not have considered the statement at sentencing.[1]
 
 
 7
 As a preliminary question, we consider whether or not Martinez's questions constituted a custodial interrogation. The custodial requirement has clearly been met; Appellant was in custody during the course of his trial.
 
 
 8
 Whether an inquiry made of a person in custody is an interrogation is a question of fact. United States v. Feldman, 788 F.2d 544, 553 (9th Cir.1986), cert. denied, 479 U.S. 1067 (1987). To determine whether questioning constitutes interrogation, we consider whether, under the totality of the circumstances, the questions are "reasonably likely to illicit an incriminating response." Rhode Island v. Innis, 446 U.S. 291, 301 (1980) (footnotes omitted); see also United States v. Booth, 669 F.2d 1231, 1237 (9th Cir.1981).
 
 
 9
 In United States v. Bernal, 719 F.2d 1475, 1478 (9th Cir.1983), we allowed a DEA agent to testify at trial as to the statements made by the defendant during a chance meeting during the trial.[2] "[Defendant's] statements were spontaneous and admission of them does not violate [defendant's] right to counsel." Id. The factual similarity between the conversations with criminal defendants after indictment and out of the presence of counsel here and in Bernal is substantial. The conversation between Appellant and Martinez was not a custodial interrogation, and the admission of Martinez's letter detailing the conversation did not violate Appellant's fifth and sixth amendment rights.
 
 III.
 
 10
 The presentence report originally calculated the appropriate guideline range as 12-18 months, based on an offense level of 6 (adjusted offense level of 8, with a 2-level reduction for acceptance of responsibility) and a criminal history category of VI. The probation officer recommended a sentence of 30 months (or 12 months more than the guideline maximum) due to Appellant's prior record of criminal conduct, prior deportations without formal charges, and perceived threat to the community. On the basis of the letter from Martinez, see supra note 1, the probation officer recommended and the court found that Appellant had not accepted responsibility, and the court denied the two-point reduction. This raised the guideline range to 18-24 months. The government maintained that a 12-month upward departure from the maximum guideline range was still appropriate, thus making the recommended sentence 36 months. The court accepted this recommendation, and sentenced Appellant to 36 months in prison, with three years supervised release.
 
 
 11
 Departures from the Guidelines are reviewed under a three-step process: (1) whether the district court had legal authority to depart, reviewed de novo; (2) whether the circumstance identified as the basis for the departure was supported by the district court's factual findings, reviewed for clear error; and (3) whether the amount of departure was unreasonable, which we review "in light of the standards and policies incorporated in the Act and the Guidelines." United States v. Lira-Barraza, --- F.2d ---- (9th Cir.1991) (en banc).
 
 
 12
 An amendment to the Guidelines, which became effective on November 1, 1989, provides for a 4-level increase, "If the defendant previously was deported after sustaining a conviction for a felony, other than a felony involving violation of the immigration laws." U.S.S.G. § 2L1.2(b)(1). The commentary to the section makes clear that this adjustment is in addition to any criminal history points added for the same conviction. Appellant's crime occurred October 2, 1989; § 2L1.2(b)(1) cannot be retroactively applied to him.
 
 
 13
 However, the presentence report recommended that the court make an upward departure that would make the sentence equal to what Appellant would receive if sentenced under § 2L1.2(b)(1), because the guideline applicable to Appellant did not take into consideration the aggravating factor of Appellant's felony conviction for possession of approximately a half-gram of cocaine. At sentencing, the court also considered Appellant's other felony convictions in departing upward.[3]
 
 
 14
 Under the Lira-Barraza 3-step process, step (1) has been met, as the aggravating circumstance was clearly one that the Sentencing Commission did not adequately take into account when formulating the Guidelines. Reviewing whether the Sentencing Commission considered the circumstance of increased statutory penalties under § 1326, such consideration would have been impossible, as the statute was amended after the effective date of the Guidelines. The Commission's 1989 amendment to § 2L1.2 indicates that the circumstance should result in departure here. The inclusion of the 4-level increase indicates that a felony conviction prior to deportation is a serious circumstance that should be considered by a sentencing court, and thus is a proper basis for departure.
 
 
 15
 At step (2), we find no error in the district court's factual findings supporting the existence of the identified circumstance. The district judge more than adequately discussed the aggravating circumstances of Appellant's background and criminal history justifying the departure. No allegation has been made that would cause us to doubt the accuracy of the circumstances alleged in the presentence report.
 
 
 16
 Finally, at step (3), the degree of departure was not unreasonable. The term of imprisonment actually imposed was less than the statutorily-prescribed maximum, and was within the applicable guideline range that would have resulted had § 2L1.2(b)(1) applied to Appellant. The sentence imposed was within the "range of permissible sentences." Lira-Barraza, --- F.2d at ----.
 
 
 17
 The district court did not err in departing upward from the applicable guideline range.[4]
 
 IV.
 
 18
 Appellant argues that the government discriminated against him by prosecuting him for violation of § 1326, a felony, while giving similarly situated individuals the option to plead guilty to and be sentenced under § 1325, a misdemeanor.
 
 
 19
 To establish impermissibly selective prosecution, Appellant must show that others who are similarly situated have not been prosecuted, and that the prosecution has been based on an impermissible motive. United States v. Aguilar, 883 F.2d 662, 705 (9th Cir.1989), cert. denied sub nom, Socorro Pardo v. United States, 111 S.Ct. 751 (1991); United States v. Lee, 786 F.2d 951, 957 (9th Cir.1986). "The similarly situated group is the control group. The control group and defendant are the same in all relevant respects, except that defendant was, for instance, exercising his ... rights." Aguilar, 883 F.2d at 706.
 
 
 20
 Appellant moved before trial to dismiss the indictment for selective prosecution. The motion was continued to sentencing, at which time Appellant attempted to introduce evidence that of the more than two hundred § 1325 violations prosecuted in the two-week period during which Appellant was arrested, at least 13 individuals with more serious criminal records than Appellant's were prosecuted for § 1325 rather than § 1326 violations. The court denied the motion and refused to admit the evidence for lack of foundation.
 
 
 21
 Our review of the record indicates that appellant's expert witness was unable to break down his statistical data to demonstrate how many felony convictions were received by and how many aliases were used by the 13 individuals who would have constituted the control group. To be a control group, the 13 individuals would have to have closely compatible criminal histories, and would have to have failed to "hassle" immigration agents after their incarceration. Appellant has not made either showing.
 
 V.
 
 22
 Appellant claims that he was improperly convicted of § 1326(b)(1), which provides for a five-year maximum sentence for a deported alien who has previously been convicted of a felony and is subsequently found in the United States, because the district court omitted from the jury's purview the element of whether or not Appellant had previously been convicted of a felony. Failure to instruct a jury as to all essential elements of a crime is error. Cabana v. Bullock, 474 U.S. 376, 384 (1986).
 
 
 23
 The government contends that any error in instructing the jury as to the elements of § 1326 was invited by appellant. We agree. The court's instructions to the jury defined the elements of § 1326 in the same way as the instructions tendered by the appellant. "[B]ecause the error in this case was invited, we will reverse in only the most 'exceptional situation.' " Territory of Guam v. Alvarez, 763 F.2d 1036, 1037 (9th Cir.1985). Appellant testified at trial that he had been convicted of cocaine possession by a California superior court, and court documents and records relating to the prior felony conviction were tendered at trial. No exceptional circumstances requiring reversal are present in this case.
 
 VI.
 
 24
 Appellant requested and was denied the inclusion of a jury instruction for the lesser included offense of misdemeanor illegal entry, 8 U.S.C. § 1325. A defendant is entitled to a lesser included offense instruction if the elements of the lesser offense are a subset of the elements of the more serious offense, and if the evidence at trial supports such an instruction. Schmuck v. United States, 489 U.S. 705, 716 & n. 8 (1989); United States v. Walker, 915 F.2d 480, 486 (9th Cir.1990).
 
 
 25
 We need not consider whether § 1325 is a lesser included offense of § 1326, because the evidence at trial did not support an instruction on § 1325. At trial, proof was made of Appellant's prior felony conviction. It would be impossible for a rational jury to find Appellant guilty of § 1325 but not guilty of § 1326. The district court did not err in denying Appellant's request for an instruction on § 1325.
 
 VII.
 
 26
 Appellant contends that he was punished for exercising his right to trial. A defendant may not be punished more severely simply because he exercises his constitutional right to trial. United States v. Medina-Cervantes, 690 F.2d 715, 716 (9th Cir.1982). However, the mere fact that the sentence imposed after trial is more harsh than that the court would have imposed for a guilty plea does not make the sentence suspect. See McKenzie v. Risley, 842 F.2d 1525, 1537 (9th Cir.) (en banc) (plea agreement sentencing defendant to 50 years revoked; defendant received death penalty following jury trial), cert. denied, 488 U.S. 901 (1988).
 
 
 27
 The comments of the district court judge in the case at hand[5] virtually track those factors that this court approved of in McKenzie.[6] Thus, Appellant's claim that he was punished for going to trial is not supported by the record.
 
 
 28
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3
 
 
 [1]
 The conversation between Martinez and Appellant occurred while Martinez was taking Appellant to a holding cell. Appellant does not contest the accuracy of Martinez's letter in detailing the conversation, although Appellant's testimony at the sentencing hearing indicates that his responses to Martinez's questions had a different meaning than the letter implied. Martinez's letter states as follows:
 I asked the defendant, in Spanish, what do you think? He responded that it did not look too good, but he was not going to plead guilty. I asked him if he realized what he was facing. He stated that he did not care, that, he would escape any way. And that he wanted the trial because he wanted the government to spend the money anyway, because they have a lot of it. He needs the free room and board any way.
 
 
 [2]
 The DEA agent testified that the following conversation transpired with defendant Bernal:
 [Agent]: How are you doing?
 Bernal: Not so good, thanks to you.
 [Agent]: Why, what's the problem?
 Bernal: You know what the problem is, you put me into it.
 [Agent]: That's not true, you placed yourself in it.
 Bernal: No I didn't, you don't believe me, but I tell you I'm just the middleman in this, and the other people put me in it. Now I'm going to lose everything because of them.
 [Agent]: Well, why don't you turn state's evidence and help us out and we'll help you in return.
 Bernal: What do you want me to do?
 [Agent]: It's not what I want you to do, it's what you want to do. You know these people, how much they're dealing, and when.
 Bernal: What do you want me to do, lie? I'm telling you, Craig, I was just the middleman, you think I'm a big dealer, I'm not. I did what they told me to and I'll tell you this, as soon as this is over I'll help you get them, but for now I want this over first.
 719 F.2d at 1477.
 
 
 [3]
 The application of the 1989 amendment to § 2L1.2 to justify an upward departure has not yet been addressed by this circuit. Recently, the First Circuit held that an upward departure was appropriate in a similar case. United States v. Aymelek, 926 F.2d 64 (1st Cir.1991)
 It is beyond dispute that the 1988 amendments to 8 U.S.C. § 1326 applied to appellant. The court noted that, by virtue of these amendments, the maximum penalty was raised from two to five years for aliens deported following felony convictions.... The guidelines, though, had lagged behind, not incorporating these changes until the November 1989 amendments.... Since the amended version of section 1326 applied to appellant's crime, and since the Sentencing Commission could not conceivably have considered the increased penalties when drafting the 1987 version of the guidelines, the district court elected to use the incidence of the amended statute, together with the fact that appellant had been deported after a 1978 New Jersey state conviction for illegally selling a 9mm. firearm, as one basis for an upward departure.... [W]e believe that the district court was plainly justified in departing to take account of the lag time between the statutory amendments and the corresponding update of the guidelines.
 Id. at 71 (footnote and citations omitted). In Aymelek, the appellant was charged with a violation of 8 U.S.C. § 1326(a), and sentenced to five years imprisonment, with a term of supervised release. Id. at 66.
 
 
 [4]
 Appellant also contends that the upward departure was improperly based on his prior deportations and on his drug addiction. We agree that neither of these is a proper basis for departure. See United States v. Cervantes-Lucatero, 889 F.2d 916, 918 (9th Cir.1989); United States v. Richison, 901 F.2d 778, 781 (9th Cir.1990)
 Our review of the record, however, indicates that neither was the ground for the departure. The Appellant's prior deportations were cited as a justification for a sentence at or near the top of the applicable guideline range, and nowhere in the record did the district court consider Appellant's substance abuse as a ground for departure.
 
 
 [5]
 At the sentencing hearing, the district judge stated:
 You don't think that he takes his chances? If he takes the chances, then he has to face the day when it comes to an ultimate conclusion. Isn't that the way it goes? That's the way life is. [TR 5/3/90 at 49]
 Now, we talk about judges give stronger sentences or stiffer sentences after a person goes to trial. Well, you know, there's a caveat to that. The judge gets to know more about the case. You just tell me all kinds of things about the case I didn't know before, and the prosecutor tells me all things about the case. I hear it in trial. Hear everything about the defendant. Never would have heard about him making those statements to the marshal, or what his thoughts were as exhibited in that statement to the marshal if he hadn't gone to trial, would I?
 So the longer you stay here, the more I get to know, and the more I get to know, the more there is for me to make up my mind as to what should happen to the defendant. [TR 5/3/90 at 73-74]
 
 
 [6]
 In McKenzie this court noted:
 [I]n the interval between the plea negotiations and the sentencing proceedings, the trial judge had numerous opportunities to gain additional information upon which to base his sentencing decision. He presided over ... the trial; heard the testimony of fifty prosecution witnesses ...; read the presentence report; and, most important, received a unanimous jury verdict....
 842 F.2d at 1537.