956 F.2d 1168
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Larry Robert KRIKORIAN, Defendant-Appellant.
 No. 89-10207.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 13, 1992.
Decided March 3, 1992.
 
 Before GOODWIN, FLETCHER and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Krikorian was convicted of one count of possession of cocaine with intent to distribute and one count of conspiracy to distribute cocaine. He makes four claims of error on appeal. (1) Krikorian appeals the denial of his motion to suppress evidence, claiming that the magistrate issued the warrant without probable cause and that the warrant was obtained by falsehoods in the supporting affidavits. (2) He appeals the admission of evidence seized under the warrant as more prejudicial than probative. (3) He claims that the government's refusal to request use immunity for a proposed defense witness constituted prosecutorial misconduct, violating his fifth amendment due process rights. (4) He claims he should not have been sentenced under the Sentencing Guidelines. We affirm.
 
 FACTS
 
 3
 In the summer of 1987, Robert "Rocky" Moats was arrested in Denver for drug trafficking. Cooperating with the government as part of a plea bargain, he facilitated contact between his fellow drug dealer Craig Smith of San Rafael, California and undercover Denver police officer Fisher. Fisher and Smith had many telephone conversations in October 1987, and ultimately agreed that Fisher would meet Smith in San Rafael on November 3 to buy a kilogram of cocaine. Smith never told Fisher the name of his supplier.
 
 
 4
 Police from the San Rafael and Denver police departments kept Smith's apartment under surveillance. On November 3, shortly after noon, they saw Smith exit a rented brown Chevrolet driven by another man. Although they did not see the driver transfer any drugs to Smith, the police suspected him of being Smith's supplier. Around 2:00 PM, Smith sold Fisher the drugs and was promptly arrested.
 
 
 5
 Investigation after Smith's arrest disclosed that the brown Chevrolet had been rented by the defendant, Larry Robert Krikorian. Krikorian concedes he was the driver seen by the police at Smith's apartment. The police obtained a warrant to search Krikorian's home in Morro Bay, California. They found no contraband, but did discover many guns, a walkie-talkie set, a triple beam scale of the type often used to measure drugs, and other "tools of the drug trade." A subsequent warrant was issued to allow search of Krikorian's car and storage locker, where similar evidence was found.
 
 
 6
 Before trial, Krikorian moved to suppress the seized evidence because the warrants were issued without probable cause, and because the affidavits in support of the warrants contained false statements. The district court denied the motion, and a later motion in limine to exclude this evidence as being more prejudicial than probative.
 
 
 7
 At trial (December 12-21, 1988), Craig Smith was the star witness against Krikorian. Krikorian wanted to call Rocky Moats as a witness to testify generally as to what he knew of Smith's drug dealing and specifically to the fact that Smith had several different suppliers of cocaine. The prosecutor declined to request immunity for Moats, so he did not take the stand.
 
 
 8
 The jury convicted Krikorian of one count of possession of cocaine with intent to distribute and one count of conspiracy to distribute cocaine. The district court denied his motion for a new trial and also declined to resentence him under the pre-sentencing guidelines statutes.
 
 DISCUSSION
 I. Motion to Suppress
 A. Standard of Review
 
 9
 Under normal circumstances, a magistrate's determination of probable cause is not reversed unless it is clearly erroneous, United States v. Dozier, 844 F.2d 701, 706 (9th Cir.), cert. denied 488 U.S. 927 (1988), or issued without "substantial basis," United States v. Bertrand, 926 F.2d 838, 841 (9th Cir.1991). Where, as here, probable cause must be determined from a redacted affidavit, we review de novo. United States v. Elliott, 893 F.2d 220, 222 (9th Cir.), cert. denied 111 S.Ct. 268 (1990); Dozier, 844 F.2d at 706.
 
 B. Discussion
 
 10
 The district court should suppress evidence seized under a warrant if it was issued in reliance on false statements that were "deliberately or recklessly included in the affidavit and [were] material to the magistrate's finding of probable cause." United States v. Motz, 936 F.2d 1021, 1023 (9th Cir.1991). See also Elliott, 893 F.2d at 222-23; Dozier, 844 F.2d at 705. Because probable cause in this case would exist without the false statements, we may affirm without inquiry into the mental state of the affiants. See, e.g., Bertrand, 926 F.2d at 842.
 
 
 11
 To determine if the affidavits--stricken of improper material--support a finding of probable cause, we "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).
 
 
 12
 Krikorian claims that two false statements appeared in the affidavits. The first was in the affidavit of Special Agent Gary Baldocchi, submitted to the magistrate to secure the search warrant for Krikorian's home. The alleged falsehood is the omission of the fact that the police lost track of Craig Smith for a short time between the time he left Krikorian's car and the time of his arrest.
 
 
 13
 Without reference to the surveillance of Smith prior to his arrest, Baldocchi's affidavit contained the following relevant facts. (1) It is common practice for drug dealers to meet with their suppliers shortly before meeting their buyers. A few hours before he was to make a scheduled drug sale on November 3, 1987, Craig Smith met with a man driving a rented brown Chevrolet. The driver of the Chevrolet drove away in an evasive manner consistent with an attempt to detect surveillance. The car was rented by Krikorian, who was to return the car to the San Francisco airport on November 4. Instead, he returned the car to the Monterey rental office on November 5. (2) Drug dealers commonly list fictitious addresses for themselves. The address given to the rental agency was a post office box. Further investigation revealed that Krikorian's driver's license application listed his current address as 530 Main Street, Watsonville, CA. This address has for many years been the office of the A-1 Answering Service. (3) Telephone company records reveal that Smith made phone calls to Krikorian on September 7 and October 24, which is consistent with a telephone call Smith made to Fisher on October 25 which indicated that he had recently spoken with his supplier. (4) Smith had told Fisher that his supplier lived 4 hours from San Rafael. Krikorian's home is in Morro Bay and is approximately 4 fours away.
 
 
 14
 Based on these facts, there was probable cause to believe Krikorian may have been Smith's supplier. Since evidence is often found in the homes of drug dealers, there was probable cause to issue a warrant to search Krikorian's home. United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir.1986) (despite lack of direct evidence of criminality at defendant's home, "[i]n the case of drug dealers, evidence is likely to be found where the dealers live"); United States v. Fannin, 817 F.2d 1379, 1381 (9th Cir.1987) (same). Probable cause in this case is not overwhelming, but it is sufficient. Probable cause requires much less evidence than needed to sustain a conviction. Illinois v. Gates, 462 U.S. at 235. This court has previously held circumstantial evidence about as strong as that against Krikorian to be sufficient basis for a search warrant. See, e.g., United States v. Peacock, 761 F.2d 1313 (9th Cir.) (truck rented by defendants was seen in vicinity of evidence of methamphetamine production), cert. denied 474 U.S. 847 (1985).
 
 
 15
 Krikorian objects that he has innocent, legitimate explanations for many of the facts. While the facts in the affidavit may be consistent with innocence, they also may provide probable cause. The court issuing a warrant is entitled to make reasonable inferences from the facts provided. Krikorian may argue to the jury the innocent reasons for his actions. They do not render the basis for issuance of the warrant insubstantial.
 
 
 16
 The same analysis permits a finding of probable cause to search Krikorian's car and storage locker. Krikorian established that the affidavit of Officer Michael Kennedy falsely stated that cocaine residue was found during the search of Krikorian's house. We strike this falsehood, but still find probable cause. The Baldocchi affidavit was incorporated by reference in Kennedy's affidavit, and would, by itself, be grounds for a warrant. In addition, Kennedy's affidavit reported that the search of Krikorian's house had uncovered a triple beam scale, small amounts of marijuana, and a cancelled check indicating that Krikorian, consistent with the behavior of a drug dealer, rented a storage locker. Once again, Krikorian's innocent explanations may be argued to the jury, but they do not make impermissible the magistrate's inference of probable cause.
 
 
 17
 Finally, Krikorian argues that the guns and walkie-talkie should not have been seized because they were not named in the search warrants. However, the warrants contained broad clauses permitting seizure of "other items tending to establish illegal trafficking in cocaine."
 
 II. Motion in Limine
 A. Standard of Review
 
 18
 The district court's determination that proffered evidence is more probative than prejudicial is reviewed for abuse of discretion. United States v. Houser, 929 F.2d 1369, 1373 (9th Cir.1990).
 
 B. Discussion
 
 19
 Of the articles seized from Krikorian's home, car and storage locker, the Ohaus triple-beam scales, the walkie-talkie and photos of the guns were admitted into evidence by stipulation. Krikorian argued below, as he does now, that they should have been excluded as more prejudicial than probative. Krikorian essentially makes two arguments. The first describes the legitimate, innocent uses Krikorian had for the devices. Krikorian presented evidence of these innocent uses at trial, and argued them to the jury. The jury did not have to believe that the exhibits were more consistent with innocence than with guilt. The exhibits were not rendered inadmissible because they increased the likelihood of conviction.
 
 
 20
 Krikorian's second argument questions the probative value of the exhibits. All were admitted under the theory that they are "tools of the drug trade." This court has approved lower court decisions allowing similar evidence to prove involvement with drug trafficking. See United States v. Savinovich, 845 F.2d 834, 837 (9th Cir.) (scales and shotgun), cert. denied 488 U.S. 943 (1988); United States v. Crespo de Llano, 838 F.2d 1006, 1018 (9th Cir.1987) (firearms, mobile phone, pager); United States v. Bernal, 719 F.2d 1475, 1477 (9th Cir.1983) (scales and vials); United States v. Martin, 599 F.2d 880, 889 (9th Cir.) (guns), cert. denied 441 U.S. 962 (1979). Conversely, evidence of drug dealing has also been allowed as evidence of illegal possession of firearms. United States v. Butcher, 926 F.2d 811, 815-16 (9th Cir.), cert. denied 111 S.Ct. 2273 (1991). No case in this circuit has reversed a district court's decision to admit this type of physical evidence as proof of drug dealing activity.
 
 III. Failure to Immunize Defense Witness
 A. Standard of Review
 
 21
 No Ninth Circuit cases have explicitly stated the standard of review when an appellant claims that the government's refusal to grant immunity to a defense witness violates due process. The test is a mixed question of law and fact, decided on the relevance of proffered testimony and the existence of improper prosecutorial intent. Mixed questions of law and fact are reviewed de novo. United States v. McConney, 728 F.2d 1195, 1204 (9th Cir.) (en banc), cert. denied, 469 U.S. 824 (1984).
 
 B. Discussion
 
 22
 A criminal defendant is not entitled to compel the government to grant immunity to a witness. United States v. Shirley, 884 F.2d 1130, 1133 (9th Cir.1989). An exception has been recognized, however, where a prosecutor's refusal to immunize a defense witness creates such unfairness that the defendant's due process rights are violated. This exception was established in United States v. Lord, 711 F.2d 887, 892 (9th Cir.1983). A violation occurs if the testimony of the proposed defense witness is relevant and the prosecutor commits misconduct by intentionally distorting the fact-finding process. United States v. Westerdahl, No. 90-30069 (9th Cir. September 23, 1991), slip op. at 13295. We agree with the district court that the testimony of Rocky Moats was not shown to be relevant in this case. As a result, we need not examine the prosecutor's intent.
 
 
 23
 Krikorian wanted Rocky Moats to testify to his knowledge of Smith's drug dealings and sources of supply. In their briefs, the parties waste much energy accusing each other of mischaracterizing the evidence. Neither has done anything improper in the course of their advocacy. The relevant facts from the record begin with Smith's direct examination.
 
 
 24
 Q (Prosecutor): How long have you known Larry Krikorian?
 
 
 25
 A (Smith): Approximately eight years.
 
 
 26
 Q: How would you describe your relationship?
 
 
 27
 A: Well, our relationship was a friendly one.
 
 
 28
 Q: Did you ever do business with him?
 
 
 29
 A: Yes.
 
 
 30
 Q: Was that business drug related or were there other types of business propositions between the two of you?
 
 
 31
 A: Basically the business where money changed hands was drug related.
 
 
 32
 Q: How long had you been dealing--had you been dealing in drugs with Mr. Krikorian?
 
 
 33
 A: For approximately five years.
 
 
 34
 2 RT 132. See also 3 RT 61 (same on cross-examination). Later, the prosecutor asked Smith about the sale to Fisher.
 
 
 35
 Q: At that time where were you planning to get the cocaine; from whom were you planning to get the cocaine?
 
 
 36
 A: I was planning on getting it from the person that I would get--the only person I could get it from.
 
 
 37
 Q: Who would that be?
 
 
 38
 A: Mr. Krikorian.
 
 
 39
 Q: Was he your only source of supply at that time?
 
 
 40
 [The district court overruled an objection that the question was leading.]
 
 
 41
 A: During this particular year he was the only person that I got cocaine from.
 
 
 42
 2 RT 143-44.
 
 
 43
 On cross-examination, Smith testified that he had sold drugs to Rocky Moats between 1983 and 1986. During the lunch break on the last day of testimony, Krikorian's trial counsel was at last able to interview Moats off the record in the presence of Moats' court-appointed counsel. Moats stated his intention to plead the fifth unless immunized. After lunch, a sidebar was held to decide whether Moats would receive use immunity. Counsel made a limited offer of proof to the district court.
 
 
 44
 MR. SEGAL: [Moats] indicated to me that between 1983 and '86--and this was a hurried, you know, request for a timeframe, so that I cannot say that it might not go into '87 yet, that in fact he had a number of meetings with Mr. Smith. That Mr. Smith, in fact, told him that he had three different sources of cocaine in San Francisco and that he showed Mr. Moats three different types of cocaine being of different qualities and indicated that each came from a different source.
 
 
 45
 5 RT 169-170. The prosecutor refused to grant Moats immunity, arguing that Moats' testimony would not be relevant. Id. at 171-72. The court also declined to grant judicial immunity. Id. at 181.
 
 
 46
 On these facts Moats's testimony would not have been relevant. Moats would have corroborated Smith's testimony that the two of them had conducted drug transactions between 1983 and 1986. Moats would have testified that he thought Smith had three different suppliers during this time. Smith's testimony was not to the contrary. His testimony identifying Krikorian as an exclusive source of supply was expressly limited to 1987. Most importantly, Moats had no knowledge of the issue actually disputed at trial: whether Krikorian supplied Smith with the cocaine he sold to Fisher. Krikorian's fifth amendment rights were in no way compromised by his inability to present irrelevant evidence.
 
 IV. Sentencing
 A. Standard of Review
 
 47
 The effective date of legislation is a matter of statutory construction reviewed de novo.
 
 B. Discussion
 
 48
 Krikorian argues that the Sentencing Guidelines were not yet in effect at the time he committed the offenses for which he was convicted. He is wrong. The possession occurred on November 3, 1987. The effective date of the Guidelines was November 1, 1987. United States v. Rewald, 835 F.2d 215, 216 (9th Cir.1987); United States v. Bazemore, 869 F.2d 520, 521 (9th Cir.1989). The conspiracy began some time earlier, but continued until November 3, 1987. "The Sentencing Guidelines apply to offenses initiated before November 1, 1987, but not completed until after November 1, 1987." United States v. Gray, 876 F.2d 1411 (9th Cir.1989), cert. denied 110 S.Ct. 2168 (1990). It was proper for the district court to sentence Krikorian under the Guidelines.
 
 CONCLUSION
 
 49
 The convictions and sentence of Larry Robert Krikorian are AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3